T.C. Memo. 2007-351

UNITED STATES TAX COURT

RALPH E. FRAHM & ERIKA C. FRAHM, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15572-05.                    Filed November 27, 2007.

<u>Frank W. Bastian</u> and <u>Reggie L. Wegner</u>, for petitioners.

<u>Henry N. Carriger</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined deficiencies of
$1,941, $2,984, and $2,293 in petitioners' Federal income tax
(tax) for their taxable years 2000, 2001, and 2002, respectively.

We must decide whether petitioners are entitled for each of
their taxable years 2000, 2001, and 2002 to deduct under section

162(a)[1] certain amounts in excess of those conceded by respondent for "Employee benefit programs" that petitioners claimed in Schedule F, Profit or Loss From Farming (Schedule F), included as part of petitioners' tax return for each of those years. We hold that they are.

FINDINGS OF FACT

All of the facts in this case, which the parties submitted under Rule 122, have been stipulated by the parties and are so found except as stated below.

Petitioners resided in Newton, Iowa, at the time they filed the petition in this case.

At all relevant times, petitioner Ralph E. Frahm (Mr. Frahm) owned and operated a grain and livestock farm (farming business) in Newton, Iowa.

During 2000, 2001, and 2002, the years at issue, Mr. Frahm had one employee in his farming business, viz., his spouse petitioner Erika Frahm (Ms. Frahm). During those years, Ms. Frahm performed field jobs, cared for livestock, assisted with machinery repairs, maintained bookkeeping records, and performed certain other tasks that were usual and customary to Mr. Frahm's farming business. During each of the years 2000, 2001, and 2002, Mr. Frahm paid Ms. Frahm annual wages of $3,000 for those ser-

---

[1]All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

vices, from which he withheld Social Security tax and Medicare tax totaling $229.50.

On August 17, 1998, Mr. Frahm signed a preprinted form that was an authorization to provide a medical reimbursement plan under AgriPlan/BizPlan to eligible employees. The preprinted form on which that authorization appeared stated in pertinent part:

**SECTION 1 - <u>Employer Information</u>**

**Business owner last name:**                          **First:**
 Frahm                                                  Ralph

      *     *     *     *     *     *     *

**Business name:**     **Type of business:**     **Check one:**
 Ralph Frahm           Farming                    ☒ AgriPlan     ☐ Biz

      *     *     *     *     *     *     *

**SECTION 2 - <u>Eligibility Criteria</u>**

To be eligible for benefits, employee(s) must meet each of the following requirements. * * *

☒    Part-time employees must work an average of <u>25</u> hours per week.  (maximum=25 * * *)

☒    Seasonal employees must work <u>7</u> months per year. (maximum=7 * * *)

☒    Employees must be <u>25</u> years of age.  (maximum=25)

☒    Employees hired <u>prior</u> to today (Current Employees) must have been with employer for <u>0</u> months.  (maximum=36)

☒    Employees hired <u>after</u> today (New Employees) must be with employer for <u>36</u> months.  (maximum=36)

**SECTION 3 - <u>Eligible Employees</u>**

Employees listed below meet all requirements of Section 2 and are considered current employees as of the date of this agreement. * * *

| <u>Employee Last Name</u> | <u>First Name</u> | <u>Social Security Number</u> |
|---|---|---|
| 1.  Frahm | Erika | * * * |

      *     *     *     *     *     *     *

**SECTION 4 - <u>Selection of Benefits</u>**

The benefits and amounts selected below will be offered to each
employee (and their family) listed in Section 3. * * * The
employer agrees to reimburse:

☒ Health Insurance Premium reimbursements up to $ <u>ALL</u> (may use
ALL).

☒ Out of Pocket medical reimbursements up to $<u>5000</u>.

☐ Dental Insurance Premiums.

The benefits selected below will be offered to the **employee only**
(other family members excluded):

☐ Employee Term life Insurance ($50,000 Maximum) ☐ Employee
Disability
Insurance

**SECTION 5 - <u>Authorization and Payment</u>**

The undersigned employer [Mr. Frahm] hereby executes this
agreement on the <u>17</u> day of <u>Aug</u>, 19<u>98</u> and the plan start date shall
be January 1st of this year * * * [Reproduced literally.]

During each of the years 2000, 2001, and 2002, pursuant to
the authorization that he signed to provide a medical reimburse-
ment plan under AgriPlan/AgriBiz, Mr. Frahm provided such a plan
(AgriPlan/AgriBiz medical reimbursement plan) for the benefit of
Ms. Frahm and her family (i.e., Ms. Frahm and her spouse Mr.
Frahm).  At all relevant times, Ms. Frahm met the eligibility
requirements to receive benefits under that plan.

On a date not disclosed by the record prior to July 1, 2000,
Mr. Frahm completed a preprinted application form (Mr. Frahm's
Wellmark Plan C application)[2] in which he applied to
Wellmark/Blue Cross and Blue Shield of Iowa (Wellmark) for a so-
called Plan C health insurance policy to cover himself and Ms.

---

[2]The title of Mr. Frahm's Wellmark Plan C application is not
disclosed by the record.

Frahm. In that application, Mr. Frahm identified himself as "Applicant" and Ms. Frahm as "Spouse". The portion of Mr. Frahm's application entitled "Enrollment Information" stated in pertinent part:

| 1. The Health Care Plan you are applying for is: (PLEASE CIRCLE ONE) Plan A    Plan B    Plan C[3]    Plan D    Plan E    Plan F    Plan G    Plan H | 2. This request for coverage is for: (check all that apply) ☒ Self ☒ Spouse ☐ Child(ren) | 3. This application is for: (check all that apply) ☐ New Enrollment ☐ Change ☐ Adding/Removing Dependents |
|---|---|---|
| *    *    *    *    *    *    * | | |

5. How do you want to pay your premiums?
   ☐ **Direct Bill.** If so, on what basis? ☐ Quarterly ☐ Semi-annually _____
   ☐ **Automatic Account Withdrawal.** If so, on what basis? (Include a voided check.)
   ☐ Monthly-1st of the month ☐ Monthly-5th of the month ☐ Quarterly ☐ Semi-annually
   From: ☐ Checking or ☐ Savings * * *

6. The amount you are submitting is: $____ (One check or money order per application, made payable to Wellmark, Inc.)
   a. Will your employer be paying any part of the premium for this policy either directly or through wage adjustments or other means of reimbursement? ☒ No ☐ Yes
      If yes, explain:_____
   b. Will your premium payments for this coverage be deductible on your federal income tax return as a trade or business expense other than the special health insurance deduction available to self-employed persons? ☒ No ☐ Yes

7. **Qualifying previous coverage** Date of termination of previous coverage: _____
   Has this coverage been in effect for 12 consecutive months or more? ☐ Yes ☐ No
   What type of coverage did you have? ☐ Employer Group ☐ Individual
   ☐ Short Term Major Medical ☐ Group Conversion ☐ Other (please identify)_____
   Who was your previous insurer? __BC/BS__    If Blue Cross/Blue Shield (BCBS), give details below.
   Name of Contract Holder __Ralph Frahm__    I.D. Number _____
   Group or Employer Name __FB Group__    Name of Blue Cross/Blue Shield Plan _____
   ☒ I want continuous coverage from my previous BCBS program. ☐ I do not want continuous coverage from my previous BCBS program.

Wellmark approved Mr. Frahm's Wellmark Plan C application and issued a health insurance policy to him (Mr. Frahm's Wellmark Plan C policy) that covered himself and his spouse Ms. Frahm.

During 2000, Ms. Frahm paid the following premiums totaling

---

[3]Mr. Frahm circled "Plan C" as the "Health Care Plan" for which he was applying.

$6,252.60[4] for Mr. Frahm's Wellmark Plan C policy on the dates
indicated by a check drawn on, or electronic transfers from, an
individual checking account that she maintained (Ms. Frahm's
individual checking account):

| Date of Payment | Amount of Payment |
| --- | --- |
| 06/22/2000 | $1,042.10 |
| 08/08/2000 | 1,042.10 |
| 09/05/2000 | 1,042.10 |
| 10/06/2000 | 1,042.10 |
| 11/08/2000 | 1,042.10 |
| 12/05/2000 | 1,042.10 |

During 2000, Ms. Frahm paid by an electronic transfer from
Ms. Frahm's individual checking account premiums of $55.46 for a
health insurance policy issued in Ms. Frahm's name by American
Association of Retired Persons (Ms. Frahm's AARP policy).  During
that year, Ms. Frahm paid by a check drawn on Ms. Frahm's indi-
vidual checking account premiums of $548 for a cancer insurance
policy issued in Ms. Frahm's name by Conseco Health Insurance
Company (Ms. Frahm's Conseco policy).

During 2000, in addition to the premiums that Ms. Frahm paid
for Mr. Frahm's Wellmark Plan C policy, Ms. Frahm's AARP policy,
and Ms. Frahm's Conseco policy, Ms. Frahm paid a total of $3,325

[4]The parties stipulated that during 2000 Ms. Frahm paid to
Wellmark premiums totaling $6,254 for Mr. Frahm's Wellmark Plan C
policy.  That stipulation is clearly contrary to the facts that
we have found are established by the record, and we shall disre-
gard it.  See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181,
195 (1989).  The record establishes, and we have found, that
during 2000 Ms. Frahm paid directly to Wellmark premiums totaling
$6,252.60 for Mr. Frahm's Wellmark Plan C policy.

for certain medical expenses not covered by insurance (noninsurance medical expenses).[5]

Ms. Frahm submitted to AgriPlan/BizPlan a request for reimbursement of medical expenses for 2000 totaling $10,182. That submission consisted of a preprinted form entitled "Employee Benefit Expense Transmittal" (Ms. Frahm's 2000 employee benefit expense form) that Ms. Frahm had completed. That form, which Ms. Frahm signed as employee, stated in pertinent part:

**EMPLOYEE STATUS**

Gross W-2 wage to employee during
2000 (other than benefits):                              3000.00

      *      *      *      *      *      *      *

**BENEFIT TOTALS**

1  Medical/Health Insurance Premium
   (from Section 2)                              [6]6857.00

      *      *      *      *      *      *      *

7  Medical expenses from 2000 plan year
   (from Sections 3 and 4)                       [7]2082.00

---

[5]The noninsurance medical expenses paid by Ms. Frahm during 2000 are not at issue in this case.

[6]The amount shown is the amount, rounded to the nearest dollar, of the total (i.e., $6,857.06) of all of the premiums shown in "Section 2. Insurance Benefits" quoted below. But see infra note 9.

[7]We have not attempted to determine whether the "Medical expenses from 2000 plan year" of $2,082 shown under "BENEFIT TOTALS" in Ms. Frahm's 2000 employee benefit form, which consisted solely of noninsurance medical expenses, is the correct total of all of the noninsurance medical expenses listed in "Section 3 Medical Expenses" and "Section 4 Medical Expenses" of that form. That is because those expenses are not at issue in this case. See supra note 5.

8  Medical expenses from 1999 plan year
   (from Section 5)                                 [8]1243.00

      \*        \*        \*        \*        \*        \*        \*

**READ, SIGN AND DATE**

To the best of my [Ms. Frahm's] knowledge and belief, my statements in this transmittal are complete and true.  I am claiming only eligible expenses incurred during the applicable plan year(s) and for eligible plan participants.  I certify that any part or all of these expenses have not been reimbursed previously under this or any other benefit plan and have not been previously claimed as a tax deduction.

      \*        \*        \*        \*        \*        \*        \*

**Section 2.  Insurance Benefits**

      \*        \*        \*        \*        \*        \*        \*

**Major Medical/Health Insurance**

| Insured | Insurance Company | Period of Coverage | Annual Amount Paid | Last Date Paid |
|---------|-------------------|--------------------|--------------------|----------------|
|  | Wellmark Blue Cross & Blue Shield | total months 06 | [9]6253.60 | 12/01/00 |
|  | Conseco Health Ins Co (Cancer) | total months 12 | 548.00 | 04/07/00 |
|  | AARP Health | total months 01 | 55.46 | 01/01/00 |

---

[8]We have not attempted to determine whether the "Medical expenses from 1999 plan year" of $1,243 shown under "BENEFIT TOTALS" in Ms. Frahm's 2000 employee benefit form, which consisted solely of noninsurance medical expenses, is the correct total of all of the noninsurance medical expenses listed in "Section 5 Medical Expenses" of that form.  That is because those expenses are not at issue in this case.

[9]We have found that during 2000 Ms. Frahm paid premiums totaling $6,252.60 for Mr. Frahm's Wellmark Plan C policy.  See <u>supra</u> note 4.  The record does not disclose why Ms. Frahm's 2000 employee benefit expense form requested reimbursement of $6,253.60 of premiums for that policy, which is more than the amount of premiums that we have found she paid for that policy.

During 2000, Mr. Frahm, as Ms. Frahm's employer, issued to Ms. Frahm certain checks that were drawn on a joint business checking account (business checking account) that Mr. Frahm maintained for the payment of expenses for, and the receipt of income from, his farming business. Mr. Frahm issued those checks to pay Ms. Frahm certain wages and to reimburse her for the premiums for Mr. Frahm's Wellmark Plan C policy, the premiums for Ms. Frahm's AARP policy, the premiums for Ms. Frahm's Conseco policy, and the noninsurance medical expenses that Ms. Frahm paid during that year.[10]

On a date not disclosed by the record prior to February 1, 2001, Mr. Frahm decided to terminate the Wellmark Plan C policy and completed a preprinted application form entitled "Application for Individual Health Benefit Plans Blue Care, Secure Blue, and Secure Blue Select" (Mr. Frahm's Wellmark Secure Blue Select application). In that application, Mr. Frahm applied to Wellmark

---

[10]The parties stipulated that Mr. Frahm issued to Ms. Frahm certain checks included in the record that were drawn on the business checking account as payment of her wages for 2000 and as reimbursement for the insurance premiums and the noninsurance medical expenses that she paid during that year. We have found that during 2000 Ms. Frahm paid premiums of $6,252.60, and not the $6,254 that the parties stipulated she paid, for Mr. Frahm's Wellmark Plan C policy. See supra note 4. We are unable to ascertain from the record whether Mr. Frahm, as Ms. Frahm's employer, reimbursed Ms. Frahm for the $6,252.60 of premiums that we have found she paid for Mr. Frahm's Wellmark Plan C policy during 2000 or whether he reimbursed her for the $6,253.60 of premiums for that policy requested in Ms. Frahm's 2000 employee benefit expense form.

for a so-called Secure Blue Select plan to cover himself and Ms. Frahm.  In Mr. Frahm's Wellmark Secure Blue Select application, Mr. Frahm identified himself as "Applicant" and Ms. Frahm as "Spouse".  The portion of Mr. Frahm's application entitled "Enrollment Information" stated in pertinent part:

| | |
|---|---|
| 1. You are applying for: (check one)<br> ☐ Blue Care  ☐ Secure Blue  ☒ Secure Blue Select | Do you want the optional maternity rider? (This rider is only available at your initial enrollment.)<br>☐ Yes   ☒ No |
| 2. This request for coverage is for: (check all that apply)<br> ☒ Self      ☒ Spouse      ☐ Child(ren) | 3. This application is for: (check all that apply)<br> ☒ New Enrollment  ☐ Adding/Removing Dependents |
| 4.  How do you want to pay your premiums?<br>  ☐ **Direct Bill.**  If so, on what basis?<br>   ☐ Quarterly ☐ Semi-annually ☐ Annually | ☐ **Automatic Account Withdrawal.**  If so, on what basis?  (Include a voided check.)<br> ☐ Monthly-what date? ☐ 1st of the month or ☐ 5th of the month<br> ☐ Quarterly ☐ Semi-annually ☐ Annually<br>From:<br>☐ Checking  ☐ Savings |
| 5. The amount you are submitting is: $ 742.20 (Make check payable to Wellmark Blue Cross and Blue Shield of Iowa.)<br><br>Will your employer be paying any part of the premium for this coverage either directly or through wage adjustments or other means of reimbursement?  ☐ Yes ☐ No<br><br>Will your premium payments for this coverage be deductible on your federal income tax return as a trade or business expense other than the special health insurance deduction available to self-employed persons?  ☐ Yes ☐ No | |

Wellmark approved Mr. Frahm's Wellmark Secure Blue Select application and issued a health insurance policy to him (Mr. Frahm's Wellmark Secure Blue Select policy) that covered himself and his spouse Ms. Frahm.

During 2001, Ms. Frahm paid the following premiums totaling $9,281.80[11] for Mr. Frahm's Wellmark Secure Blue Select policy on

---

[11]The parties stipulated that during 2001 Ms. Frahm paid to Wellmark premiums totaling $8,164.20 for Mr. Frahm's Wellmark Secure Blue Select policy.  That stipulation is clearly contrary

(continued...)

the dates indicated by electronic transfers from Ms. Frahm's individual checking account:

| Date of Payment | Amount of Payment |
|---|---|
| 01/05/2001 | $1,117.60 |
| 02/05/2001 | 1,117.60 |
| 03/05/2001 | 366.80 |
| 04/05/2001 | 742.20 |
| 05/07/2001 | 742.20 |
| 06/05/2001 | 742.20 |
| 07/05/2001 | 742.20 |
| 08/06/2001 | 742.20 |
| 09/05/2001 | 742.20 |
| 10/05/2001 | 742.20 |
| 11/05/2001 | 742.20 |
| 12/05/2001 | 742.20 |

During 2001, Ms. Frahm paid by a check drawn on her individual checking account premiums of $548 for Ms. Frahm's Conseco policy.

During 2001, Mr. Frahm, as Ms. Frahm's employer, paid by checks drawn on the business checking account premiums of $575.96 for a long-term care insurance policy issued in Ms. Frahm's name by American Fidelity Assurance Company (Ms. Frahm's long-term care policy). During that year, Mr. Frahm, as Ms. Frahm's employer, also paid by a check drawn on the business checking

---

[11](...continued)
to the facts that we have found are established by the record, and we shall disregard it. See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. at 195. The record establishes, and we have found, that during 2001 Ms. Frahm paid directly to Wellmark premiums totaling $9,281.80 for Mr. Frahm's Wellmark Secure Blue Select policy.

account premiums of $583.60 for a long-term care insurance policy issued in Mr. Frahm's name by American Fidelity Assurance Company (Mr. Frahm's long-term care policy).

During 2001, in addition to the premiums that Ms. Frahm paid for Mr. Frahm's Wellmark Secure Blue Select policy and Ms. Frahm's Conseco policy, Ms. Frahm paid a total of $5,076 for certain noninsurance medical expenses.[12]

Ms. Frahm submitted to AgriPlan/BizPlan a request for reimbursement of medical expenses for 2001 totaling $15,188. That submission consisted of a preprinted form entitled "Employee Benefit Expense Transmittal" (Ms. Frahm's 2001 employee benefit expense form) that Ms. Frahm had completed. That form, which Ms. Frahm signed as employee, stated in pertinent part:

**EMPLOYEE STATUS**

Gross W-2 wage to employee during
2001 (other than benefits):                              3000.00

          *       *       *       *       *       *       *

**BENEFIT TOTALS**

1  Medical/Health Insurance Premium
   (from Section 2)                                    [13]8712.00

2  Employee's Long Term Care Insurance

---

[12]The noninsurance medical expenses paid by Ms. Frahm during 2001 are not at issue in this case.

[13]The amount shown is the amount, rounded to the nearest dollar, of the total (i.e., $8,712.20) of all of the premiums shown under the heading "Major Medical/Health Insurance" in "Section 2.  Insurance Benefits" quoted below. But see infra note 18.

Premium (from Section 2)                                      [14]576.00

3  Spouse's Long Term Care Insurance
   Premium (from Section 2)                                   [15]584.00

      *      *      *      *      *      *      *

7  Medical expenses from 2001 plan year
   (from Sections 3 and 4)                                    [16]3409.00

      *      *      *      *      *      *      *

8  Medical expenses from 2000 plan year
   (from Section 5)                                           [17]1837.00

      *      *      *      *      *      *      *

**READ, SIGN AND DATE**

To the best of my [Ms. Frahm's] knowledge and belief, my
statements in this transmittal are complete and true.  I am
claiming only eligible expenses incurred during the applicable
plan year(s) and for eligible plan participants.  I certify that
any part or all of these expenses have not been reimbursed
previously under this or any other benefit plan and have not been

---

[14]The amount shown is the amount, rounded to the nearest
dollar, of the premiums (i.e., $575.96) shown under the heading
"Long Term Care Insurance" for the "Employee" in "Section 2.
Insurance Benefits" quoted below.

[15]The amount shown is the amount, rounded to the nearest
dollar, of the premiums (i.e., $583.60) shown under the heading
"Long Term Care Insurance" for the "Spouse" in "Section 2.
Insurance Benefits" quoted below.

[16]We have not attempted to determine whether the "Medical
expenses from 2001 plan year" of $3,409 shown under "BENEFIT
TOTALS" in Ms. Frahm's 2001 employee benefit form, which con-
sisted solely of noninsurance medical expenses, is the correct
total of all of the noninsurance medical expenses listed in
"Section 3 Medical Expenses" and "Section 4 Medical Expenses" of
that form.  That is because those expenses are not at issue in
this case.  See supra note 12.

[17]We have not attempted to determine whether the "Medical
expenses from 2000 plan year" of $1,837 shown under "BENEFIT
TOTALS" in Ms. Frahm's 2001 employee benefit form, which con-
sisted solely of noninsurance medical expenses, is the correct
total of all of the noninsurance medical expenses listed in
"Section 5 Medical Expenses" of that form.  That is because those
expenses are not at issue in this case.  See supra note 5.

previously claimed as a tax deduction.

\* \* \* \* \* \* \*

**Section 2.  Insurance Benefits**

\* \* \* \* \* \* \*

**Major Medical/Health Insurance**

| Insured | Insurance Company | Period of Coverage | Annual Amount Paid | Last Date Paid |
|---|---|---|---|---|
| | Wellmark BC & BS | total months  12 | [18]8164.20 | 12/05/01 |
| | Conseco Health Ins Co. (Cancer) | total months  12 | 548.00 | 04/05/01 |

\* \* \* \* \* \* \*

**Long Term Care Insurance**

| Insured | Insurance Company | Period of Coverage | Annual Amount Paid | Last Date Paid |
|---|---|---|---|---|
| Employee | American Fidelity Assurance Co. | total months  12 | 575.96 | 02/01/01 |
| Spouse | American Fidelity Assurance Co. | total months  12 | 583.60 | 02/01/01 |

During 2001, Mr. Frahm, as Ms. Frahm's employer, issued to Ms. Frahm certain checks that were drawn on the business checking account to pay her certain wages and to reimburse her for the premiums for Mr. Frahm's Wellmark Secure Blue Select policy, the premiums for Ms. Frahm's Conseco policy, and the noninsurance

---

[18]We have found that during 2001 Ms. Frahm paid premiums totaling $9,281.80 for Mr. Frahm's Wellmark Secure Blue Select policy.  See supra note 11.  The record does not disclose why Ms. Frahm's 2001 employee benefit expense form requested reimbursement of only $8,164.20 of the premiums paid for that policy.

medical expenses that she paid during that year.[19]

During 2002, Ms. Frahm paid the following premiums totaling $9,529.20 for Mr. Frahm's Wellmark Secure Blue Select policy on the dates indicated by electronic transfers from Ms. Frahm's individual checking account:

| Date of Payment | Amount of Payment |
| --- | --- |
| 01/07/2002 | $794.10 |
| 02/05/2002 | 794.10 |
| 03/05/2002 | 794.10 |
| 04/05/2002 | 794.10 |
| 05/06/2002 | 794.10 |
| 06/05/2002 | 794.10 |
| 07/05/2002 | 794.10 |
| 08/05/2002 | 794.10 |
| 09/05/2002 | 794.10 |
| 10/07/2002 | 794.10 |
| 11/05/2002 | 794.10 |
| 12/05/2002 | 794.10 |

During 2002, Ms. Frahm paid by checks drawn on her individual checking account premiums of $548 for Ms. Frahm's Conseco policy, premiums of $575.96 for Ms. Frahm's long-term care

_____

[19]The parties stipulated that Mr. Frahm issued to Ms. Frahm certain checks included in the record that were drawn on the business checking account as payment of her wages for 2001 and as reimbursement for the insurance premiums and the noninsurance medical expenses that she paid during that year. We have found that during 2001 Ms. Frahm paid premiums of $9,281.80, and not the $8,164.20 that the parties stipulated she paid, for Mr. Frahm's Wellmark Secure Blue Select policy. See supra note 11. We are unable to ascertain from the record whether Mr. Frahm, as Ms. Frahm's employer, reimbursed Ms. Frahm for the $9,281.80 of premiums that we have found she paid for Mr. Frahm's Wellmark Secure Blue Select policy during 2001 or whether he reimbursed her for the $8,164.20 of premiums for that policy requested in Ms. Frahm's 2001 employee benefit expense form.

policy, and premiums of $523.60 for Mr. Frahm's long-term care policy.

During 2002, in addition to the premiums that Ms. Frahm paid for Mr. Frahm's Wellmark Secure Blue Select policy, Ms. Frahm's Conseco policy, Ms. Frahm's long-term care policy, and Mr. Frahm's long-term care policy, Ms. Frahm paid a total of $2,784 for certain noninsurance medical expenses.[20]

Ms. Frahm submitted to AgriPlan/BizPlan a request for reimbursement of medical expenses for 2002 totaling $13,961. That submission consisted of a preprinted form entitled "Employee Benefit Expense Transmittal" (Ms. Frahm's 2002 employee benefit expense form) that Ms. Frahm had completed. That form stated in pertinent part:

**EMPLOYEE STATUS**

Gross W-2 wage to employee during
2002 (other than benefits):                    3000.00

          *    *    *    *    *    *    *

**BENEFIT TOTALS**

Medical/Health Insurance Premium
(from Section 2)                          [21]10077.00

Employee's Long Term Care Insurance

---

[20]The noninsurance medical expenses paid by Ms. Frahm during 2002 are not at issue in this case.

[21]The amount shown is the amount, rounded to the nearest dollar, of the total (i.e., $10,077.20) of all of the premiums shown under the heading "Major Medical/Health Insurance" in "Section 2. Insurance Benefits" quoted below.

Premium (from Section 2)                                    [22]576.00

Spouse's Long Term Care Insurance
Premium (from Section 2)                                    [23]524.00

          *       *       *       *       *       *       *

Medical expenses from Jan to Dec 2002
(from Sections 3 & 4)                                       [24]2606.00

          *       *       *       *       *       *       *

**Section 2.  Insurance Benefits**

          *       *       *       *       *       *       *

**Major Medical/Health Insurance**

| Insured | Insurance Company | Period of Coverage | Annual Amount Paid | Last Date Paid |
|---------|-------------------|--------------------|--------------------|----------------|
|         | Wellmark BC & BS  | total months 12    | 9529.20            | 12/05/02       |
|         | Conseco Health Ins Co. (Cancer) | total months 12 | 548.00 | 04/08/02 |

---

[22]The amount shown is the amount, rounded to the nearest dollar, of the premiums (i.e., $575.96) shown under the heading "Long Term Care Insurance" for the "Employee" in "Section 2. Insurance Benefits" quoted below.

[23]The amount shown is the amount, rounded to the nearest dollar, of the premiums (i.e., $523.60) shown under the heading "Long Term Care Insurance" for the "Spouse" in "Section 2. Insurance Benefits" quoted below.

[24]The parties stipulated that the amount of "Medical expenses from Jan to Dec 2002" shown under "BENEFIT TOTALS" in Ms. Frahm's 2002 employee benefit expense form, which consisted solely of noninsurance medical expenses, should have been shown in that form as $2,784.  We have not attempted to determine whether that stipulated amount is the correct total of all of the noninsurance medical expenses listed in "Section 3 Medical Expenses" and "Section 4 Medical Expenses" of Ms. Frahm's 2002 employee benefit expense form.  That is because those expenses are not at issue in this case.  See supra note 20.

**Long Term Care Insurance**

| Insured | Insurance Company | Period of Coverage | Annual Amount Paid | Last Date Paid |
|---|---|---|---|---|
| Employee | American Fidelity Assurance Co. | total months 12 | 575.96 | 02/16/02 |
| Spouse | American Fidelity Assurance Co. | total months 12 | 523.60 | 02/16/02 |

During 2002, Mr. Frahm, as Ms. Frahm's employer, issued to Ms. Frahm certain checks that were drawn on the business checking account to pay her certain wages and to reimburse her for the premiums for Mr. Frahm's Wellmark Secure Blue Select policy, the premiums for Ms. Frahm's Conseco policy, the premiums for Ms. Frahm's long-term care policy, the premiums for Mr. Frahm's long-term care policy, and the noninsurance medical expenses that she paid during that year.

Petitioners timely filed Form 1040, U.S. Individual Income Tax Return (return), for each of their taxable years 2000 (2000 return), 2001 (2001 return), and 2002 (2002 return). Petitioners included Schedule F as part of the 2000 return (2000 Schedule F), the 2001 return (2001 Schedule F), and the 2002 return (2002 Schedule F). Each such Schedule F pertained to Mr. Frahm's farming business. Petitioners claimed, inter alia, deductions of $10,182, $14,948, and $13,961 for expenses for "Employee benefit programs" in the 2000 Schedule F, the 2001 Schedule F, and the 2002 Schedule F, respectively.

On June 7, 2005, respondent issued to petitioners a notice

of deficiency (notice) with respect to their taxable years 2000, 2001, and 2002. In that notice, respondent, inter alia, determined to disallow the deductions of $10,182, $14,948, and $13,961 that petitioners claimed in the 2000 Schedule F, the 2001 Schedule F, and the 2002 Schedule F, respectively, for "Employee benefit programs" because "it has not been established that these amounts were ordinary and necessary business expenses, or were expended for the purpose designated." In the notice, respondent also determined to allow petitioners deductions of $6,109, $8,969, and $9,773 for their taxable years 2000, 2001, and 2002, respectively, for "Self-Employed Health Insurance" because "you are allowed the deduction for self-employed health insurance premiums."

## OPINION

We first address section 7491(a). The parties agree that section 7491(a) is applicable in the instant case. The parties disagree over whether the burden of proof has shifted to respondent under that section. We need not, and we shall not, address that disagreement. That is because resolution of the issue presented here does not depend on who has the burden of proof.

We turn now to whether petitioners are entitled to deduct under section 162(a) certain amounts in excess of the amounts conceded by respondent for "Employee benefit programs" that petitioners claimed in the 2000 Schedule F, the 2001 Schedule F,

and the 2002 Schedule F, respectively.[25]  A taxpayer, including

_____

[25]With respect to the $10,182 deduction that petitioners claimed for "Employee benefit programs" in the 2000 Schedule F, respondent concedes that petitioners are entitled to deduct $3,928 of those expenses.  That conceded amount, which has been rounded to the nearest dollar, consists of premiums of $55.46 for Ms. Frahm's AARP policy, premiums of $548 for Ms. Frahm's Conseco policy, and all noninsurance medical expenses of $3,325.  The disallowed portion (i.e., $6,254) pertains to the premiums that the parties stipulated were paid for Mr. Frahm's Wellmark Plan C policy.  See supra note 4.  In the notice, respondent determined that although petitioners are not entitled to deduct in the 2000 Schedule F the insurance premiums paid during 2000 for Mr. Frahm's Wellmark Plan C policy, petitioners are entitled to deduct under sec. 162(l) 60 percent of those premiums.

With respect to the $14,948 deduction that petitioners claimed for "Employee benefit programs" in the 2001 Schedule F, respondent concedes that petitioners are entitled to deduct $6,200 of those expenses.  That conceded amount, which has been rounded to the nearest dollar, consists of premiums of $548 for Ms. Frahm's Conseco policy, premiums of $575.96 for Ms. Frahm's long-term care policy, and all noninsurance medical expenses of $5,076.  The disallowed portion (i.e., $8,748) pertains to the premiums that the parties stipulated were paid for Mr. Frahm's Wellmark Secure Blue Select policy and Mr. Frahm's long-term care policy.  See supra note 11.  In the notice, respondent determined that although petitioners are not entitled to deduct in the 2001 Schedule F the insurance premiums paid during 2001 for Mr. Frahm's Wellmark Secure Blue Select policy and Mr. Frahm's long-term care policy, petitioners are entitled to deduct under sec. 162(l) 60 percent of those premiums.

With respect to the $13,961 deduction that petitioners claimed for "Employee benefit programs" in the 2002 Schedule F, respondent concedes that petitioners are entitled to deduct $3,908 of those expenses.  That conceded amount, which has been rounded to the nearest dollar, consists of premiums of $548 for Ms. Frahm's Conseco policy, premiums of $575.96 for Ms. Frahm's long-term care policy, and all noninsurance medical expenses of $2,784.  The disallowed portion (i.e., $10,053) pertains to the premiums paid for Mr. Frahm's Wellmark Secure Blue Select policy and Mr. Frahm's long-term care policy.  In the notice, respondent determined that although petitioners are not entitled to deduct in the 2002 Schedule F the insurance premiums paid during 2002

(continued...)

the owner of an unincorporated business, is entitled to deduct all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, sec. 162(a), including any amount paid to an employee pursuant to an employee benefit plan for an expense that such employee pays or incurs, sec. 162(a)(1); sec. 1.162-10, Income Tax Regs.[26]  However, a taxpayer who owns an unincorporated business is not entitled to deduct health insurance costs that he pays or incurs for himself, his spouse, and his dependents except as provided in section 162(l).[27]

------

[25](...continued)
for Mr. Frahm's Wellmark Secure Blue Select policy and Mr. Frahm's long-term care policy, petitioners are entitled to deduct under sec. 162(l) 70 percent of those premiums.

[26]See Albers v. Commissioner, T.C. Memo. 2007-144; Francis v. Commissioner, T.C. Memo. 2007-33.

[27]As applicable here, sec. 162(l)(1) provides that a tax-payer is entitled to deduct 60 percent of any amount that such taxpayer paid or incurred during 2000 and 2001 and 70 percent of any amount that such taxpayer paid or incurred during 2002 for insurance that constituted medical care for such taxpayer, such taxpayer's spouse, and such taxpayer's children.  Sec. 162(l) provides in pertinent part:

SEC. 162.  TRADE OR BUSINESS EXPENSES.

   *      *      *      *      *      *      *

   (l) Special Rules for Health Insurance Costs of Self-Employed Individuals.--

      (1) Allowance of deduction.--

         (A) In general.--In the case of an indi-
                                    (continued...)

It is petitioners' position that they are entitled for each of the years at issue to deduct under section 162(a) as ordinary and necessary business expenses the total amount of insurance premiums that remain at issue.[28]  In support of their position, petitioners argue that Mr. Frahm, as Ms. Frahm's employer, paid such total amount to Ms. Frahm, directly (i.e., reimbursed Ms. Frahm for the insurance premiums that she paid to the insurers in question) or indirectly (i.e., paid the insurance premiums to the insurer in question), pursuant to a health plan within the meaning of section 105(b).

---

[27](...continued)
vidual who is an employee within the meaning of section 401(c)(1), there shall be allowed as a deduction under this section an amount equal to the applicable percentage of the amount paid during the taxable year for in-surance which constitutes medical care for the taxpayer, his spouse, and dependents.

> (B) Applicable percentage.--For purposes of subparagraph (A), the applicable percent-age shall be determined under the following table:

| For taxable years beginning in calendar year-- | The applicable percentage is-- |
| --- | --- |
| 1999 through 2001 . .. . . . .. . . .60 | |
| 2002 . . . . . . . . . . . . . . . .70 | |

The legislative history under sec. 162(l) establishes that that statute was enacted "to reduce the disparity between the tax treatment of owners of incorporated and unincorporated busi-nesses."  S. Rept. 104-16, at 11 (1995); see also H. Rept. 104-32, at 7-8 (1995).

[28]See supra note 25.

It is respondent's position that the insurance premiums that remain at issue are personal expenses and therefore are not deductible as ordinary and necessary business expenses under section 162(a). In support of respondent's position, respondent argues:

> **Employee Benefit Plan expenses claimed on the Schedule F are deductible as ordinary and necessary expenses paid pursuant to an employee benefit plan if the medical and insurance expenses are attributable to the employee.**

> \*       \*       \*       \*       \*       \*       \*

> Respondent does not dispute the existence of an agreement between Ralph Frahm, as employer, and Erika Frahm, as employee, that provided that the employer would provide health insurance benefits to the employee. Respondent does not dispute that Erika Frahm was an employee of Ralph Frahm. Respondent does not dispute that Erika Frahm worked sufficient hours at a sufficient wage rate to qualify for health insurance benefits. Respondent does dispute that the actual health insurance policy purchased by petitioners, in Ralph Frahm's name, which provided coverage for Erika Frahm, was an ordinary and necessary business expense.

> \* \* \* Petitioners' expenses bore no relation to Ralph Frahm's farming business. His only employee received the health benefits giving rise to the disputed expenses by virtue of her marital relationship with Ralph Frahm, and not by virtue of the employment relationship.

> \* \* \* The family relationship - not the employment relationship - was the means by which the health insurance coverage reached Erika Frahm. Erika Frahm would not have received the benefit of health insurance coverage under the policy purchased if she had not been Ralph Frahm's wife. But, she would have received the benefit as his wife regardless of whether she was Ralph Frahm's employee.

> \*       \*       \*       \*       \*       \*       \*

Ralph Frahm provided benefits to the wrong person when petitioners bought a health insurance policy with Ralph, instead of with his employee, Erika, as the primary insured. Petitioners fail to meet the requirements of I.R.C. § 162(a). Petitioners claim the disputed expense as a business expense in the nature of compensation for services rendered. The health insurance policy was taken out in Ralph Frahm's name. While his wife benefited incidentally from this, as his covered spouse under the policy, it can hardly be said that she was compensated by petitioners buying insurance for Ralph Frahm and his dependents. * * * [Reproduced literally.]

As we understand respondent's position, respondent is arguing that if an employer maintains a health plan described in section 105 that covers one or more employees, such employee(s)' spouse(s), and such employee(s)' dependents, only the payments that the employer makes for the medical expenses of the employee(s), and not the payments that the employer makes for the medical expenses of the employee(s)' spouse(s) and dependents, constitute payments made pursuant to such a plan. Consequently, according to respondent, any payment that the employer makes for the medical expenses of the employee(s)' spouse(s) and dependents are not payments made to such employee(s) pursuant to an employee benefit plan within the meaning of section 1.162-10, Income Tax Regs. We disagree.

Section 105(b) provides in pertinent part:

SEC. 105.  AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH
            PLANS.

    *        *        *        *        *        *        *

        (b) Amounts Expended for Medical Care.--
* * * gross income does not include amounts
referred to in subsection (a)[29] if such
amounts are paid, directly or indirectly, to
the taxpayer to reimburse the taxpayer for
expenses incurred by him for the medical care
(as defined in section 213(d)) of the tax-
payer, his spouse, and his dependents
* * *.[30]   [Emphasis added.]

Section 105(b) excludes from gross income amounts referred to in

section 105(a) that an employer pays, directly or indirectly, to

an employee in order to reimburse the employee for expenses for

the medical care, as defined in section 213(d), of not only the

employee, but also the employee's spouse and dependents.

    During the years at issue, pursuant to the AgriPlan/AgriBiz

medical reimbursement plan, Mr. Frahm, as Ms. Frahm's employer,

_____

    [29]Sec. 105(a) provides:

        (a) Amounts Attributable to Employer
Contributions.--Except as otherwise provided in this
section, amounts received by an employee through acci-
dent or health insurance for personal injuries or
sickness shall be included in gross income to the
extent such amounts (1) are attributable to contribu-
tions by the employer which were not includible in the
gross income of the employee, or (2) are paid by the
employer.

    [30]For purposes of sec. 105(b), expenses for medical care
include amounts paid as premiums for insurance covering medical
care referred to in sec. 213(d)(1)(A) and (B) and for any quali-
fied long-term care insurance contract as defined in sec.
7702B(b).  Sec. 213(d)(1)(D).

paid, directly or indirectly, to Ms. Frahm certain amounts for premiums for various insurance policies covering herself, her spouse Mr. Frahm, and/or both of them.[31]  Respondent concedes the deductibility under section 162(a) of the amounts of such premiums that Mr. Frahm, as Ms. Frahm's employer, paid, directly or indirectly, to Ms. Frahm for the insurance policies issued in her name and covering only her.  Respondent disputes only the deductibility under section 162(a) of the amounts of such premiums that Mr. Frahm, as Ms. Frahm's employer, paid, directly or indirectly, to Ms. Frahm for the insurance policies issued in his name and covering only him or covering him and her.[32]

We consider first the respective amounts that Mr. Frahm, as Ms. Frahm's employer, paid during the years at issue directly to Ms. Frahm in order to reimburse her for the premiums that she paid during those years for the policies issued in her spouse's (i.e., Mr. Frahm's) name.  On the record before us, we find that, pursuant to the AgriPlan/AgriBiz medical reimbursement plan, Mr. Frahm, as Ms. Frahm's employer, paid directly to Ms. Frahm certain amounts (1) during 2000 in order to reimburse her for the premiums that she paid during that year for Mr. Frahm's Wellmark Plan C policy, (2) during 2001 in order to reimburse her for the

---

[31]Respondent does not dispute that the AgriPlan/AgriBiz medical reimbursement plan constitutes a health plan described in sec. 105.

[32]See supra note 25.

premiums that she paid during that year for Mr. Frahm's Wellmark Secure Blue Select policy, and (3) during 2002 in order to reimburse her for the premiums that she paid during that year for Mr. Frahm's Wellmark Secure Blue Select policy and Mr. Frahm's long-term care policy.[33]  See sec. 105(b).  On that record, we further find that the respective amounts that Mr. Frahm, as Ms. Frahm's employer, paid pursuant to the AgriPlan/AgriBiz medical reimbursement plan directly to Ms. Frahm (1) during 2000 in order to reimburse her for the premiums that she paid for Mr. Frahm's Wellmark Plan C policy, (2) during 2001 in order to reimburse her for the premiums that she paid for Mr. Frahm's Wellmark Secure Blue Select policy, and (3) during 2002 in order to reimburse her for the premiums that she paid for Mr. Frahm's Wellmark Secure Blue Select policy and Mr. Frahm's long-term care policy consti-tute ordinary and necessary business expenses of Mr. Frahm's farming business within the meaning of section 162(a).[34]  See sec. 162(a)(1); sec. 1.162-10, Income Tax Regs.

We next consider the premiums that Mr. Frahm, as Ms. Frahm's employer, paid during 2001 to American Fidelity Assurance Company

---

[33]The Court directs the parties to determine as part of the computations under Rule 155 the respective amounts that Mr. Frahm, as Ms. Frahm's employer, paid directly to Ms. Frahm during 2000 and 2001 in order to reimburse her for the premiums that she paid during those respective years for Mr. Frahm's Wellmark Plan C policy and Mr. Frahm's Wellmark Secure Blue Select policy.  See supra notes 10 and 19.

[34]See supra note 33.

for Mr. Frahm's long-term care policy.  Section 1.105-2, Income Tax Regs., provides:

> If the taxpayer incurs an obligation for medical care, payment to the obligee in discharge of such obligation shall constitute indirect payment to the taxpayer as reimbursement for medical care.  Similarly, payment to or on behalf of the taxpayer's spouse or dependents shall constitute indirect payment to the taxpayer.

During 2001, pursuant to the AgriPlan/AgriBiz medical reimbursement plan, Mr. Frahm, as Ms. Frahm's employer, made a payment to the insurer on behalf of Ms. Frahm's spouse (i.e., Mr. Frahm) for the premiums for Mr. Frahm's long-term care policy. On the record before us, we find that Mr. Frahm, as Ms. Frahm's employer, paid pursuant to that plan indirectly to Ms. Frahm the amount of those premiums for the medical care of her spouse.  See sec. 105(b); sec. 1.105-2, Income Tax Regs.  On that record, we further find that the amount that Mr. Frahm, as Ms. Frahm's employer, paid pursuant to the AgriPlan/AgriBiz medical reimbursement plan indirectly to Ms. Frahm during 2001 for the premiums for Mr. Frahm's long-term care policy constitutes an ordinary and necessary business expense of Mr. Frahm's farming business within the meaning of section 162(a).  See sec. 162(a)(1); sec. 1.162-10, Income Tax Regs.

Based upon our examination of the entire record before us, we find that petitioners are entitled to deduct under section

162(a) certain amounts[35] in excess of the amounts conceded by respondent for "Employee benefit programs" that petitioners claimed in the 2000 Schedule F, the 2001 Schedule F, and the 2002 Schedule F, respectively.[36]

We have considered all of the parties' contentions and arguments that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.[37]

To reflect the foregoing and the concessions of respondent,

Decision will be entered under Rule 155.

---

[35]See supra note 33.

[36]Cf. Albers v. Commissioner, T.C. Memo. 2007-144. Unlike the instant case, in Albers, the fully stipulated record did not establish that Darwin J. Albers (Mr. Albers), as the employer of Peggy L. Albers (Ms. Albers), paid, directly or indirectly, to Ms. Albers pursuant to the AgriPlan/AgriBiz medical reimbursement plan involved in that case the medical expenses at issue there in order to reimburse her for expenses incurred or paid for the medical care of herself, her spouse Mr. Albers, and/or her dependent children. Nor did the fully stipulated record in that case establish why the payment by the taxpayers of the claimed medical expenses qualified those expenses as ordinary and necessary expenses paid or incurred by Mr. Albers in carrying on his farming business.

[37]In light of our findings and holdings herein, we reject respondent's argument on brief and determinations in the notice that the insurance premiums at issue are subject to sec. 162(l).